```
                 UNITED STATES DISTRICT COURT
                  DISTRICT OF MASSACHUSETTS
_____
                               )
OCEAN SEMICONDUCTOR LLC,       )
                               )
               Plaintiff,      )   Civil Action
                               )   No. 20-cv-12310
v.                             )
                               )
ANALOG DEVICES, INC.,          )
                               )
               Defendant.      )
_____)
```

**MEMORANDUM AND ORDER**

October 11, 2023

Saris, D.J.

**INTRODUCTION**

Plaintiff Ocean Semiconductor LLC ("Ocean") alleges that Defendant Analog Devices, Inc. ("ADI") infringes claims 4 and 5 of U.S. Patent No. 6,836,691 ("the '691 patent"), a "Method and Apparatus for Filtering Metrology Data Based on Collection Purpose," both directly and indirectly in violation of 35 U.S.C. §§ 271(a), (b), & (g) (Count III). ADI has moved to dismiss on the grounds that Ocean has (1) failed to plausibly allege that the newly accused system, Inficon's FabGuard system, infringes the '691 patent and has also (2) failed to plead scienter sufficient to satisfy claims under 35 U.S.C. §§ 271(b) & (g).

1

For the following reasons, the Court **DENIES IN PART** and **ALLOWS IN PART** ADI's motion to dismiss (Dkt. 143).

## BACKGROUND

On March 28, 2023, the Court allowed without prejudice ADI's motion to dismiss under 35 U.S.C. § 101 (Dkt. 126). See Ocean Semiconductor LLC v. Analog Devices, Inc., No. 20-12310, 2023 WL 2662186 (D. Mass. Mar. 28, 2023). The Court assumes familiarity with that opinion. Ocean was granted leave to replead "if there [was] a factual basis for alleging that ADI infringed claims 4 and 5" of the '691 patent. Id. at *8. In discussing these two claims, the Court found the following:

> Claims 4 and 5 . . . describe identifying the presence or absence of a workpiece fault and changing the collection purpose data in response. . . . [They] are devoted to the abstract idea of "filtering" but are saved at step 2 [of Alice Corp. Pty. Ltd. v. CLS Bank Int'l, 573 U.S. 208 (2014)] because they carve out a specific innovation as to the use of fault detection data so that the "collection purpose data" is evaluated based on the presence or absence of evidence of faulty data.
>      . . . .
>      The Court cannot conclude that, as a matter of law, the specific technical improvement to the [semiconductor] manufacturing process in claims 4 and 5 is not inventive. The record, the complaint, the specification, and patent claims 4 and 5 together contain concrete allegations that a limitation of excluding false data was not routine or conventional.

Id. at *7-8. On April 27, 2023, Ocean filed a Second Amended Complaint ("SAC") which alleges for the first time that ADI employs Inficon's FabGuard system, which fabricates or manufactures

2

products that infringe the '691 patent. See Dkt. 134. On May 24, 2023, Ocean filed a Third Amended Complaint ("TAC"). See Dkt. 142. In its TAC, Ocean alleges that claims 4 and 5 "specifically provide for additional steps of identifying whether or not a fault condition is present based on the metrology data and changing the collection purpose data responsive to the presence or absence of a fault condition." Dkt. 142 at 17. The TAC also alleges that use of the Inficon's FabGuard system infringes the '691 patent. Id. at 35.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, the factual allegations in a complaint must "possess enough heft" to state a claim to relief that is plausible on its face. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). "Plausible, of course, means something more than merely possible, and gauging a pleaded situation's plausibility is a context-specific job that compels [the court] to draw on [its] judicial experience and common sense." Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (cleaned up) (quoting Iqbal, 556 U.S. at 679).

**DISCUSSION**

I.  **Plausibility of Infringement**

ADI argues that Ocean does not provide factual allegations that support a plausible claim that the newly accused system, Inficon's FabGuard system, infringes claims 4 and 5 of the '691 patent, specifically "the critical claim step of 'changing the collection purpose data.'" Dkt. 144 at 4. According to ADI, none of the allegations in the claim chart Ocean appended to the TAC support a plausible inference that the accused system meets the "changing the collection purpose data" element. Ocean disagrees, arguing that the claim chart demonstrates the plausibility of its claim and gives the alleged infringer fair notice.

The Federal Circuit has ruled that a plaintiff is "not required to plead infringement on an element-by-element basis." Bot M8 LLC v. Sony Corp. of Am., 4 F.4th 1342, 1352 (Fed. Cir. 2021). "[I]t is enough that a complaint place the alleged infringer on notice of what activity is being accused of infringement." Id. (cleaned up) (quoting Lifetime Indus., Inc. v. Trim-Lok, Inc., 869 F.3d 1372, 1379 (Fed. Cir. 2017)). "The level of detail required in any given case will vary depending upon a number of factors, including the complexity of the technology, the materiality of any given element to practicing the asserted claim(s), and the nature of the allegedly infringing device." Id. at 1353; see also Disc Disease Sols. Inc. v. VGH Sols., Inc., 888 F.3d 1256, 1260 (Fed.

4

Cir. 2018) (finding that a plaintiff need not plead every element but must only give the alleged infringer fair notice).

ADI argues that Ocean's claim chart for the '691 patent (which is at least 100 pages long) fails to support a plausible inference that the accused system satisfies the "changing the collection purpose data" limitation. The term "collection purpose data" is referenced at least twenty times in Ocean's claim chart. See Dkt. 142-3 (Exhibit F) at 26, 28, 30, 37-41, 44, 78-79, 81, 83, 86-87, 101, 103, 105, 107-08. Moreover, Ocean asserts at least nine allegations as to how the accused system meets the "changing the collection purpose data" claim element. See id. at 78-89, 101-09. For example, for claim 4, Ocean alleges that "through FabGuard's root cause analysis, collection purpose data is changed responsive to the fault detection" and "FabGuard changes the collection purpose data in respons[e] to the fault detection." Id. at 86-87 (emphasis added). For claim 5, Ocean alleges that "the FabGuard system is able to change the collection purpose data." Id. at 108 (emphasis added). Ocean also adds that:

> As an additional example, the FabGuard system is able to change the collection purpose data responsive to identifying the absence of the fault condition because it "can build mathematical correlations between real-time parameter behavior and post-process metrology results" and "[t]hese correlations can be used to improve the knowledge used to determine equipment health, as it takes into account process health beyond available real-time information[.]"

5

Id. at 107 (first alteration in original). Emphasizing that quantity is not a substitute for quality, ADI challenges the contention that the accused system meets the critical requirement of "changing the collection purpose data."

This case highlights the difficulty of determining plausibility before claim construction and discovery given the complexity of the technology in the semiconductor industry. Drawing all reasonable inferences in Ocean's favor, the Court concludes that Ocean has adequately identified the system accused of infringing the relevant claims, and produced a claim chart that supports the plausibility of infringement. No more is necessary at this stage of the litigation.

## II. Section 271(b) Inducement Claim

ADI argues that the TAC fails to plausibly allege scienter for Ocean's induced infringement claim under 35 U.S.C. § 271(b). Section 271(b) of the Patent Act provides that "[w]hoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b). Induced infringement "requires knowledge that the induced acts constitute patent infringement." Global-Tech Appliances, Inc. v. SEB S.A., 563 U.S. 754, 766 (2011); see also Moba, B.V. v. Diamond Automation, Inc., 325 F.3d 1306, 1318 (Fed. Cir. 2003) ("Although § 271(b) does not use the word 'knowingly,' this court has uniformly imposed a knowledge requirement."), cert.

6

denied, 540 U.S. 982 (2003). The Supreme Court reaffirmed the knowledge requirement in Commil USA, LLC v. Cisco Systems, Inc.:

> And the Global-Tech rationale is sound. Qualifying or limiting its holding . . . would lead to the conclusion, both in inducement and contributory infringement cases, that a person, or entity, could be liable even though he did not know the acts were infringing. In other words, even if the defendant reads the patent's claims differently from the plaintiff, and that reading is reasonable, he would still be liable because he knew the acts might infringe. Global-Tech requires more. It requires proof the defendant knew the acts were infringing. And the Court's opinion was clear in rejecting any lesser mental state as the standard.

575 U.S. 632, 642 (2015) (emphasis added).

Moreover, courts "have uniformly interpreted section 271(b) to require not just knowledge . . . but also a 'specific intent and action to induce infringement.'" Mark A. Lemley, Inducing Patent Infringement, 39 U.C. Davis L. Rev. 225, 238 (2005). However, "[w]hile the specific intent requirement is well-established in the law, the Federal Circuit has been unable to agree on precisely what it is that a defendant must intend," and this "division in authority has continued to plague the courts." Id. at 238, 240 (footnote omitted).

Many courts have adopted the requirement that the plaintiff must establish that "the defendant possessed specific intent to encourage another's infringement and not merely that the defendant had knowledge of the acts alleged to constitute inducement." Manville Sales Corp. v. Paramount Sys., Inc., 917 F.2d 544, 553

7

(Fed. Cir. 1990). "The intent standard for inducement, therefore, focuses on, and can be met by proof of, the defendant's subjective state of mind, whether actual knowledge or the subjective beliefs (coupled with action to avoid learning more) that characterizes willful blindness." Roche Diagnostics Corp. v. Meso Scale Diagnostics, LLC, 30 F.4th 1109, 1118 (Fed. Cir. 2022) (cleaned up) (quoting TecSec, Inc. v. Adobe Inc., 978 F.3d 1278, 1286 (Fed. Cir. 2020)). Thus, at the motion to dismiss stage, "a complaint must plead facts plausibly showing that the accused infringer 'specifically intended [another party] to infringe [the patent] and knew that the [other party]'s acts constituted infringement.'" Lifetime, 869 F.3d at 1379 (alterations in original) (quoting In re Bill of Lading Transmission & Processing Sys. Pat. Litig., 681 F.3d 1323, 1339 (Fed. Cir. 2012)). Circumstantial evidence may suffice to prove intent. MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp., 420 F.3d 1369, 1378 (Fed. Cir. 2005).

The parties dispute the date that ADI gained the necessary knowledge to be held liable for induced infringement. They identify four possible dates: (1) **November 25, 2020,** the date that Ocean alleges it placed ADI on actual notice of the '691 patent and that ADI's actions constituted infringement (see Dkt. 142 at 35); (2) **December 31, 2020,** the date Ocean filed its original complaint (see Dkt. 1); (3) **November 30, 2022,** the date Ocean served a third-party subpoena to Inficon (see Dkt. 110-3); and (4) **April 27,**

8

**2023**, the date Ocean filed the SAC, the first pleading to expressly name Inficon's FabGuard system as an accused system (see Dkt. 134).

With respect to the first date, the TAC alleges that "[a]t least as of November 25, 2020, Ocean Semiconductor placed ADI on actual notice of the '691 patent and actual notice that its actions constituted and continued to constitute infringement of the '691 patent" via a detailed notice letter. Dkt. 142 at 35. However, as ADI points out, ADI did not have notice of "the currently alleged use of Inficon's FabGuard system by Maxim, because ADI had not yet acquired Maxim at the time of the alleged notice and would not do so until eight months later on August 21, 2021." Dkt. 144 at 12. Thus, although ADI had knowledge of the '691 patent by late 2020, it lacked knowledge of the presently accused system. And without knowledge of the accused system, ADI could not have known which "induced acts constitute[d] patent infringement." Commil, 575 U.S. at 640-42 (rejecting the argument that section 271(b) only requires knowledge of the patent); see also Caterpillar Prodotti Stradali S.R.L. v. Int'l Trade Comm'n, 847 F. App'x 893, 898 (Fed. Cir. 2021) ("Induced infringement requires proof of two types of knowledge by the alleged inducer: knowledge of the patent in question and knowledge that the induced acts infringe the patent.").

Ocean's original complaint, filed on December 31, 2020, also failed to provide ADI with the necessary knowledge. Ocean argues

that starting with its original complaint, its "pleadings have consistently specifically identified a lengthy list of the '691 Infringing Instrumentalities" and "consistently alleged that the accused products infringed because they were produced using an infringing process." Dkt. 147 at 15. Ocean insists that its choice to "identify one or more exemplary systems did not prejudice its right to identify other exemplary systems as infringing." Id. (emphasis omitted). But Ocean did not accuse Inficon's FabGuard system in its original complaint and it has asserted no cases to support its argument that simply identifying "exemplary" or "similar systems," without more, is sufficient to provide notice to meet the scienter requirement under § 271(b). Id.

The next question is whether service of Ocean's third-party subpoena on Inficon constituted sufficient notice. On November 30, 2022, Ocean served Inficon with a notice of subpoena, which it also served on ADI. See Dkt. 110-3. The subpoena demanded Inficon produce documents "sufficient to show the use, utilization, installation, implementation, and/or deployment of FabGuard, Factory Scheduler, and/or Metrology Optimizer in any manufacturing and/or fabrication facility owned, operated, or controlled by [ADI]." Dkt. 110-3 at 19. Six days later, ADI moved to quash the subpoena. See Dkt. 109.

No court has yet addressed whether a third-party subpoena naming the accused system for the first time in a pending patent

10

suit provides the necessary knowledge to the alleged infringer under § 271(b). However, several district courts have addressed whether a filed complaint provides sufficient knowledge. A divide exists among the courts presented with this issue. As summarized most recently in K9 Sport Sack, LLC v. Little Chonk Co.:

> District courts across the country are divided over whether a defendant must have the knowledge necessary to sustain claims of indirect infringement, including induced infringement, before the filing of the lawsuit. Some district courts have held that pre-suit knowledge is an absolute requirement, reasoning that "[t]he purpose of a complaint is to obtain relief from an existing claim and not to create a claim." Other district courts have held that "the filing of a complaint is sufficient to provide knowledge of the patents-in-suit for purposes of stating a claim for indirect infringement occurring after the filing date."

No. 22-5120, 2023 WL 4348690, at *3 (D.N.J. July 5, 2023) (alteration in original) (citations omitted); see also ZapFraud, Inc. v. Barracuda Networks, Inc., 528 F. Supp. 3d 247, 249-51 (D. Del. 2021) (finding it "neither wise nor consistent with principles of judicial economy to allow court dockets to serve as notice boards for future legal claims for indirect infringement").

The Court declines to find that third-party subpoenas provide the necessary knowledge to hold an accused infringer liable for inducing infringement for acts done after the subpoena was served. Unlike a complaint, Ocean's third-party subpoena to Inficon contains no infringement allegations. The subpoena only references the '691 patent as an "Asserted Patent" in a list with five other

11

patents. See Dkt. 110-3 at 13. In addition to Inficon, Ocean also served subpoenas to Hitachi High-Tech America, Inc. and Applied Materials, Inc., requesting documents regarding those companies' systems and products. See Dkts. 110-2, 110-4. In its motion to quash those subpoenas, ADI criticized Ocean's "fishing expedition," stating that Ocean had sent "out a scattershot of third-party subpoenas to various entities with no known link to any of the pending claims." Dkt. 110 at 5. Moreover, nowhere in the TAC does Ocean plead that ADI obtained knowledge based on Ocean's subpoena to Inficon. Thus, there is no plausible allegation that ADI had the requisite knowledge by late 2022.

The final date to consider is April 27, 2023, the date Ocean filed the SAC, which contained the allegation that ADI's use of Inficon's FabGuard system infringed the '691 patent. Ocean filed the SAC four days before May 1, 2023, the date the '691 patent expired. Thus, even if a complaint constitutes notice, the SAC does not constitute adequate notice.

Because Ocean has not sufficiently plead scienter, the Court **ALLOWS** ADI's motion to dismiss Ocean's induced infringement claim under § 271(b).

## III. Section 271(g) Importation Claim

### A. Notice Requirement

ADI also argues that the TAC fails to plausibly allege notice, which it contends is required for pleading claims under 35 U.S.C. § 271(g). Section 271(g) of the Patent Act provides:

> Whoever without authority imports into the United States or offers to sell, sells, or uses within the United States a product which is made by a process patented in the United States shall be liable as an infringer, if the importation, offer to sell, sale, or use of the product occurs during the term of such process patent.

35 U.S.C. § 271(g). "While § 271(a) makes it an act of infringement, inter alia, to sell a patented article or to make an article by a patented process, § 271(g) makes it an act of infringement to sell an article made by a patented process. Both involve direct, not indirect, liability." McRO, Inc. v. Namco Bandai Games Am., Inc., 23 F. Supp. 3d 1113, 1121 (C.D. Cal. 2013).

Section 287(b)(2) provides a safe harbor for alleged infringers who do not receive notice of infringement with respect to a product before the product is in their possession or in transit to them. Section 287(b)(2) provides: "No remedies for infringement under section 271(g) shall be available with respect to any product in the possession of, or in transit to, the person subject to liability under such section before that person had notice of infringement with respect to that product." 35 U.S.C. § 287(b)(2). "Notice of infringement" is defined as "actual

13

knowledge, or receipt by a person of a written notification, or a combination thereof, of information sufficient to persuade a reasonable person that it is likely that a product was made by a process patented in the United States." Id. § 287(b)(5)(A). The statute further provides that "modifications of remedies provided in this subsection shall not be available to any [infringer under § 271(g)] who . . . had knowledge before the infringement that a patented process was used to make the product the importation, use, offer for sale, or sale of which constitutes the infringement." Id. § 287(b)(1)(C).

While ADI correctly states that in certain circumstances, an alleged infringer may escape § 271(g) liability if it did not receive notice of infringement, ADI fails to cite any case in which a § 271(g) claim was dismissed due to a failure to plead notice. Courts have held that a "failure to plead presuit notice under § 287(b)(2) should not result in the complete dismissal of [a patentee's] § 271(g) claims." Viking Techs., LLC v. SquareTrade Inc., No. 20-1509, 2021 WL 7209514, at *5 (D. Del. Dec. 9, 2021), report and recommendation adopted, 2022 WL 611058 (D. Del. Jan. 5, 2022); see also Sorenson v. Dorman Prods., Inc., No. 09-1579, 2009 WL 4261189, at *2 (S.D. Cal. Nov. 24, 2009) ("[A]lthough §§ 271(g) and 287(b)(2) do limit damages . . . to only those damages arising during the term of the patent and after the infringer has received notice, those provisions are inapplicable at this early stage in

the litigation."); Compound Photonics, Ltd. v. Sony Corp., No. 11-552, 2013 WL 12090660, at *3 (E.D. Tex. Mar. 7, 2013) (declining to import a knowledge pleading requirement into § 271(g) based on § 287(b)(2)), report and recommendation adopted, 2013 WL 12091673 (E.D. Tex. Mar. 26, 2013).

The parties do not dispute that at the earliest, ADI began employing Inficon's FabGuard system on August 21, 2021, the date it acquired Maxim. Dkt. 144 at 12. Most courts have addressed the issue of notice under § 287(b)(2) as applied to § 271(g) liability at summary judgment. See, e.g., Seoul Viosys Co. v. P3 Int'l Corp., No. 16-6276, 2018 WL 4759744, at *10-11 (S.D.N.Y. Sept. 18, 2018), aff'd, 810 F. App'x 903 (Fed. Cir. 2020); Celanese Int'l Corp. v. Oxyde Chems., Inc., 554 F. Supp. 2d 725, 729-30 (S.D. Tex. 2008), appeal dismissed, 315 Fed. App'x 243 (Fed. Cir. 2008). At the motion to dismiss stage, "[l]iability under § 271(g) is subject to the same pleading standard as direct infringement under § 271(a)." Everlight Elecs. Co. v. Bridgelux, Inc., No. 17-03363, 2017 WL 10447905, at *2 (N.D. Cal. Oct. 11, 2017) (alteration in original) (quoting Anza Tech. v. D-Link Sys., Inc., No. 16-01263, 2016 WL 8732647, at *4 (S.D. Cal. Nov. 11, 2016)).

### B. Manufacturing Products

Finally, ADI argues that Ocean's allegations under § 271(g) should be dismissed because the '691 patent is not asserted against a method of manufacturing a "product." Section 271(g) states that

liability only exists for importing, using, selling, or offering to sell "a product which is made by a process patented in the United States." 35 U.S.C. § 271(g). Courts interpreting this statute have restricted the scope of liability to manufacturing processes that produce physical products. See Bayer AG v. Housey Pharms., Inc., 340 F.3d 1367, 1377 (Fed. Cir. 2003) (holding that "in order for a product to have been 'made by a process patented in the United States' it must have been a physical article that was 'manufactured' and that the production of information is not covered"); see also Momenta Pharms., Inc. v. Teva Pharms. USA Inc., 809 F.3d 610, 615 (Fed. Cir. 2015) (limiting "§ 271(g) to the actual 'ma[king]' of a product, rather than extend[ing] its reach to methods of testing a final product or intermediate substance to ensure that the intended product or substance has in fact been made" (first alteration in original)), cert. denied, 580 U.S. 820 (2016).

ADI's primary argument is that the asserted claims of the '691 patent do not produce a physical article, and that the claims only involve testing rather than manufacturing. However, the Court finds that the TAC plausibly alleges that the asserted claims are directed to activities that are at least part of a manufacturing process to produce semiconductor devices. See, e.g., Dkt. 142 at 36 ("The '691 Accused Products are manufactured by a process including all of the limitations of at least claims 4 and 5 of the

16

'691 patent. The '691 Accused Products are made by a claimed method. Each is an integrated circuit fabricated or manufactured using, for example, Inficon's FabGuard."). Ocean has plausibly alleged that the '691 patent's claimed methods are "seemingly integral to the overall manufacture" of semiconductor devices. Anvik Corp. v. Sharp Corp., No. 07-0825, 2010 WL 11416949, at *5 (S.D.N.Y. Aug. 11, 2010). Moreover, the '691 patent specification refers to the manufacture of physical products. See, e.g., Dkt. 1-9, '691 patent at 1:8-11 ("This invention relates generally to an industrial process, and, more particularly, to a method and apparatus for filtering metrology data based on collection purpose in a semiconductor device manufacturing environment."); 3:24-26 ("In the illustrated embodiment, the manufacturing system is adapted to fabricate semiconductor devices."). The District Court of the Eastern District of Texas similarly denied a motion to dismiss Ocean's § 271(g) claims in another case involving similar patents. See Ocean Semiconductor LLC v. Huawei Device USA, Inc., No. 20-991, 2021 WL 1627172, at *2 (E.D. Tex. Apr. 27, 2021).

Accordingly, the Court **DENIES** ADI's motion to dismiss Ocean's importation claim under 35 U.S.C. § 271(g).

IV. **The '330 Patent**

ADI argues that Ocean does not state a plausible claim for infringement of the '330 patent (Count II) because Ocean fails to "plausibly allege that the claimed method is carried out by any

17

specific accused system." Dkt. 144 at 14. The Court need not resolve this issue as the '330 patent claims have been stayed pending <u>ex parte</u> reexamination by the United States Patent and Trademark Office under 35 U.S.C. § 302. <u>See</u> Dkt. 165.

## ORDER

The Court **ALLOWS** ADI's motion to dismiss (Dkt. 143) with respect to Ocean's induced infringement claim under 35 U.S.C. § 271(b). The Court **DENIES** ADI's motion to dismiss with respect to all other claims.

SO ORDERED.

/s/ PATTI B. SARIS<br>
Hon. Patti B. Saris<br>
United States District Judge